FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

JUN 2 1 2018

BY
UNDER SEAL DEPUTY_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:18-CR-40 |
| | § | (Judge RWS/JDL) |
| BERYL-ANNE TUFON LOBE | § | |
| a/k/a BERYL-ANNE GOKALE TUFON | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

**Medicare Program**

1.      The Medicare Program ("Medicare") is a federal health insurance program

providing benefits to persons aged 65 or older or who are blind or disabled.  Medicare is

administered by the Centers for Medicare and Medicaid Services (CMS), a federal

agency under the United States Department of Health and Human Services (HHS).

Individuals who receive benefits under Medicare are referred to as Medicare

"beneficiaries."

2.      Medicare is a "health care benefit program," as defined by 18 U.S.C. §

24(b), in that it is a public plan affecting commerce under which medical benefits, items,

and services are provided to individuals and under which individuals and entities who

provide medical benefits, items, or services may obtain payments.

3.      Medicare is a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), in that it is a plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States government.

4.      CMS contracts with private insurance organizations called "intermediaries" to receive, adjudicate, and pay Medicare claims that are submitted by approved health care providers.  CMS has contracted with Palmetto GBA (a subsidiary of Blue Cross Blue Shield of South Carolina) to serve as the intermediary for Texas and 13 other states.

5.      As part of its contract, Palmetto GBA is also required to process the applications of home health care agencies seeking to enroll in the Medicare program to provide home health services.

6.      Home health services are provided by licensed medical professionals at a patient's residence and are paid as "Medicare Part A" benefits through Medicare's Hospital Insurance program.  Examples of home health services include:  intermittent skilled nursing services, physical therapy, and speech-language pathology.  Skilled nursing services include the monitoring of blood sugar levels and the daily administration of insulin to insulin-dependent diabetic Medicare beneficiaries.

7.      A home health care agency seeking to enroll in Medicare is responsible for the accuracy of all information in its application.  If approved, the home health care agency is issued a unique provider number.  This provider number must appear on all claims that the agency submits for payment.

8.     Upon enrollment, Medicare providers are issued a provider manual that describes the requirements to participate as a provider in the Medicare program. Providers also periodically receive newsletters advising them of the additional requirements for participation and instructions on what services are or are not covered by Medicare.

9.     Contained in the provider manual are the requirements of 42 CFR § 409.42, which mandates that all of the following requirements must be met for home health services to be covered and reimbursable by Medicare:

a.     The beneficiary must be confined to the home or an institution that is not a hospital;

b.     The beneficiary must be under the care of a physician who establishes the plan of care;

c.     The beneficiary must be in need of skilled services such as intermittent skilled nursing services, physical therapy, speech-language pathology service, or continuing occupational therapy services;

d.     The patient must be under a plan of care that meets the requirement specified in Section 409.43, specifying the medical treatments to be furnished as well as the type of home health discipline that will furnish the ordered services and at what frequency the services will be furnished; and

    e.    The home health services must be provided by, or under arrangements made by, a Medicare-approved home health agency.

10.     Effective April 1, 2011, CMS initiated a new requirement for Medicare beneficiaries who are admitted for home health services.  Prior to admission or within 30 days following admission, the certifying physician must see the beneficiary "face-to-face" and document the encounter on a certification form that is provided to the home health agency.  The agency must have this completed form on file prior to submitting a claim for the period.

11.     To determine the proper level of care for a patient and ultimately the amount of payment a home health care agency will receive, Medicare requires that home health care agencies perform a comprehensive assessment of the patient that accurately reflects the patient's current condition and provides information to measure his or her progress.  In making this assessment, home health care agencies are required to complete a form called the Outcome and Assessment Information Set (OASIS).

12.     With limited exceptions, the OASIS assessment must be completed by a registered nurse who completes a detailed checklist after examining the prospective patient.  Among other things, the OASIS contains a projection of the minimum number and type of treatments the patient will need through home health care.  The number of home health care visits is used to determine the compensation to the home health care agency.

13.     The OASIS information is then used to create a Plan of Care (CMS Form 485).  The Plan of Care specifies the frequency of home health visits and describes the

services to be provided to the patient.  A physician must sign the CMS Form 485, certifying that home health care is necessary and that he or she has approved the Plan of Care.

14.  Since October 2000, Medicare has compensated home health care agencies using the "Prospective Payment System" (PPS).  This split-payment approach is based upon 60-day time periods.  For each episode of care, the home health care agency submits an initial Request for Anticipated Payment (RAP), and Medicare then pays 60% of the anticipated cost prior to the provision of services.  The remaining 40% is paid after the provision of services and upon Medicare's receipt of the home health care agency's final claim.

15.  If the beneficiaries are still eligible for home health services after their initial episode of care, they may be re-certified for another 60-day home health episode. For a subsequent (or re-certified) episode, the payment is split 50/50 between the RAP and the final claim.  There is no maximum number of home health episodes that a beneficiary may receive.

16.  In pre-paying the home health care provider, Medicare assumes that a certain minimum number of home health care visits will be necessary for each episode of care.  If the number of home health care visits falls below the minimum number of expected visits for any 60-day period, the calculations for reimbursement switch to payment on a per-visit basis for that 60-day period.  This results in a lower amount of reimbursement to the home health care agency and sometimes can even require that the home health care agency return money to Medicare.  Consequently, when a home health

care agency submits a final claim, it is required to represent whether the minimum number of home health visits were made during the 60-day episode.

17.     Medicare also requires that the home health agency maintain a clinical record of every patient's past and current condition.  In addition to the patient's Plan of Care, the record must include signed and dated clinical progress notes and copies of summary reports sent to the attending physician.  While the form of progress notes may vary, all progress notes must contain the identity of the home health agency employee who performed the visit, the name of the patient, and the type of service performed.

### The Defendant and Axion Healthcare Services, LLC

18.     **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, formed Axion Healthcare Services, LLC (Axion) in Missouri City, Texas, in or around July 2008.

19.     Axion was in the business of providing home health services to Medicare Part A beneficiaries and billing Medicare for the purported services it provided.

20.     On December 29, 2008, a Medicare application form (CMS-855A) for Axion was submitted to Palmetto GBA.  On the application form, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, was listed as having an ownership interest in Axion.

21.     On or about April 23, 2010, Axion received notification that it had met the requirements for Medicare participation and had been issued Medicare provider number 74-7281.

22.     In or about October 2014, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, became the sole owner of Axion.

23.     In or about January 2015, Axion relocated to Houston, Texas.

24.     All payments made by CMS to Axion were in the form of a pre-arranged electronic deposit into Axion's bank account.

25.     From May-August 2015, Axion billed Medicare approximately $225,597.35 for start of care certifications and re-certifications of beneficiaries residing within the Eastern District of Texas.  CMS paid Axion approximately $141,031.33 on those claims.

## Count One

Violation:  18 U.S.C. § 371
(Conspiracy)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     From in or around May 2015, and continuing thereafter until in or about August 2015, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendant, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, knowingly and willfully conspired and agreed with others, both known and unknown to the Grand Jury, to commit and abet certain offenses against the United States, namely:

> a.     to violate the Anti-Kickback statute by knowingly and willfully soliciting and receiving any remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring Medicare beneficiaries to **Beryl-Anne Tufon Lobe,**

a/k/a **Beryl-Anne Gokale Tufon**, and Axion for the furnishing and

arranging for the furnishing of any item or service for which

payment may be made in whole or in part under the Medicare

program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A);

b.     to violate the Anti-Kickback statute by knowingly and willfully

offering and paying remuneration, including any kickback, directly

or indirectly, overtly or covertly, in cash or in kind, to "recruiters" or

"marketers" and others to induce the referral of Medicare

beneficiaries to **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne**

**Gokale Tufon**, and Axion for the furnishing of any item or service

for which payment may be made in whole or in part under the

Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A);

and

c.     to violate the Anti-Kickback statute by knowingly and willfully

offering and paying remuneration, including any kickback, directly

or indirectly, overtly or covertly, in cash or in kind, to Medicare

beneficiaries to induce the beneficiaries to purchase, lease, order,

and arrange for or recommend purchasing, leasing, and ordering any

good, facility, service, and item for which payment may be made in

whole or in part under the Medicare program, in violation of 42

U.S.C. § 1320a-7b(b)(2)(B).

## Object of the Conspiracy

3.      It was the object of the conspiracy for the defendant **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, and co-conspirators to unlawfully enrich themselves by buying and selling Medicare beneficiary information, including Medicare beneficiary names and Medicare Health Insurance Claim Numbers ("Medicare numbers"), which was then used to bill Medicare for home health services.

## Manner and Means of the Conspiracy

The manner and means by which the defendant **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, and co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      To find eligible Medicare beneficiaries, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, would and did pay kickbacks to certain co-conspirators called "recruiters" or "marketers" who recruited and referred Medicare beneficiaries to Axion, a home health company owned by **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, for the purpose of billing Medicare for home health services purportedly provided to those beneficiaries.

5.      Recruiters and others acting on behalf of **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, would and did receive kickback payments from **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, in exchange for the referral of Medicare beneficiaries to Axion for the purpose of billing Medicare for home health services purportedly provided to those beneficiaries.

6.      **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, and co-conspirators paid kickbacks to Medicare beneficiaries for the purpose of arranging for home health services purportedly provided to those beneficiaries for which payment may be made in whole or in part under Medicare.

### Overt Acts

7.      In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Eastern District of Texas, and elsewhere:

a.      On or about April 29, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, sent a text message to an Axion employee with the name, date of birth, and Medicare number of Medicare beneficiaries D.D. and H.D.

b.      On or about April 30, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, sent a text message to an Axion employee with the name, date of birth, and Medicare number of Medicare beneficiaries H.A. and S.E.

c.      On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, made a withdrawal of $5,000 cash from Axion's bank account (Account No. xxxxx0088) with the notation "Marketing Jacksonville" on the withdrawal slip.

d.      On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, made a withdrawal of $5,000 cash from

Axion's bank account (Account No. xxxxx9321) with the notation "Marketing Jacksonville" written on the withdrawal slip.

e.    On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, paid cash to Medicare beneficiary D.D., who lived in Frankston, Texas, to sign up for home health services with Axion.

f.    On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary D.D. as a registered nurse.

g.    On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, paid cash to Medicare beneficiary H.D., who lived in Frankston, Texas, to sign up for home health services with Axion.

h.    On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary H.D. as a registered nurse.

i.    On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, and a co-conspirator recruiter paid cash to Medicare beneficiary H.A., who lived in Frankston, Texas, to sign up for home health services with Axion.

j.     On or about May 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary H.A. as a registered nurse.

k.     On or about May 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, sent a text message to an Axion employee with the name, date of birth, and Medicare number of Medicare beneficiary W.J.

l.     On or about May 11, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, sent a text message to an Axion employee with the name, date of birth, and Medicare number of Medicare beneficiaries T.M. and R.M.

m.     On or about May 12, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, cashed a check written on Axion's bank account (Account No. xxxxx0088) in the amount of $7,000 and made payable to herself with the notation "Marketing in Jacksonville & Nacogdoches" written on the check.

n.     On or about May 12, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, and a co-conspirator recruiter paid cash to Medicare beneficiary S.E., who lived in Frankston, Texas, to sign up for home health services with Axion.

o.      On or about May 12, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary S.E. as a registered nurse.

p.      On or about May 12, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, paid Medicare beneficiary W.J., who lived in Jacksonville, Texas, to sign up for home health services with Axion.

q.      On or about May 12, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary W.J. as a registered nurse.

r.      On or about May 14, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, cashed a check written on Axion's bank account (Account No. xxxxx0088) in the amount of $800 and made payable to herself with the notation "Marketing Jacksonville" written on the check.

s.      On or about May 14, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, sent a text message to an Axion employee with the name, date of birth, and Medicare number of Medicare beneficiary E.T.

t.      On or about May 16, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, cashed a check written on Axion's bank account (Account No. xxxxx0088) in the amount of $6,000 and

made payable to herself with the notation "Marketing Tyler, Jacksonville & Nacogdoches" written on the check.

u.   On or about May 16, 2015, a co-conspirator recruiter paid cash to Medicare beneficiary T.M., who lived in Lufkin, Texas, to sign up for home health services with Axion.

v.   On or about May 16, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary T.M. as a registered nurse.

w.   On or about May 16, 2015, a co-conspirator recruiter paid cash to Medicare beneficiary R.M., who lived in Lufkin, Texas, to sign up for home health services with Axion.

x.   On or about May 16, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary R.M. as a registered nurse.

y.   On or about May 16, 2015, a co-conspirator recruiter paid cash to Medicare beneficiary E.T., who lived in Nacogdoches, Texas, to sign up for home health services with Axion.

z.   On or about May 16, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary E.T. as a registered nurse.

aa.   On or about May 28, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, made a cash withdrawal of $7,800 from

Axion's bank account (Account No. xxxxx0088) with the notation "Marketing in Jacksonville & Nacogdoches" written on the withdrawal slip.

bb.    On or about June 5, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, sent a text message to an Axion employee with the name, date of birth, and Medicare number of Medicare beneficiaries M.J., L.J., C.W., and R.S.

cc.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, made a cash withdrawal of $10,000 from Axion's bank account (Account No. xxxxx0088) with the notation "Marketing in Jacksonville, Nacogdoches & Lufkin" written on the withdrawal slip.

dd.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, sent a text message to an Axion employee with the name, date of birth, and Medicare number of Medicare beneficiary O.B.

ee.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, paid cash to Medicare beneficiary O.B., who lived in Tyler, Texas, to sign up for home health services with Axion.

ff.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary O.B. as a registered nurse.

gg.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, and a co-conspirator recruiter paid cash to Medicare beneficiary M.J., who lived in San Augustine, Texas, to sign up for home health services with Axion.

hh.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary M.J. as a registered nurse.

ii.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, and a co-conspirator recruiter paid cash to Medicare beneficiary L.J., who lived in San Augustine, Texas, to sign up for home health services with Axion.

jj.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary L.J. as a registered nurse.

kk.    On or about June 10, 2015, a co-conspirator recruiter paid cash to Medicare beneficiary C.W., who lived in Nacogdoches, Texas, to sign up for home health services with Axion.

ll.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary C.W. as a registered nurse.

mm.    On or about June 10, 2015, a co-conspirator recruiter paid cash to Medicare beneficiary R.S., who lived in Nacogdoches, Texas, to sign up for home health services with Axion.

nn.    On or about June 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, digitally signed a Plan of Care (CMS Form 485) for Medicare beneficiary R.S. as a registered nurse.

oo.    On or about June 23, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, cashed a check written on Axion's bank account (Account No. xxxxx0088) in the amount of $7,000 and made payable to herself with the notation "Marketing Nacogdoches" written on the check.

pp.    On or about July 9, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, cashed a check written on Axion's bank account (Account No. xxxxx0088) in the amount of $7,000 and made payable to herself with the notation "Marketing in Nacogdoches Recerts" written on the check.

qq.    On or about August 10, 2015, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, made a cash withdrawal of $4,000 from Axion's bank account (Account No. xxxxx0088) with the notation

"Marketing San Augustine & Nacogdoches" written on the

withdrawal slip.

All in violation of 18 U.S.C. § 371.

### Counts Two through Five

> Violation:  42 U.S.C. § 1320a-
> 7b(b)(2)(B) (Offer and Payment
> of Illegal Remuneration) and 18
> U.S.C. § 2 (Aiding and Abetting)

1.    The General Allegations section of this Indictment is realleged and

incorporated by reference as though fully set forth herein.

2.    On or about the following dates, in the Eastern District of Texas, the

defendant, **Beryl-Anne Tufon Lobe, a/k/a Beryl-Anne Gokale Tufon**, aided and

abetted by others known and unknown to the Grand Jury, did knowingly and willfully

offer to pay and did pay remuneration directly and indirectly, overtly and covertly, in

cash and in kind to the Medicare beneficiaries listed below in order to induce these

beneficiaries to arrange for home health treatment through Axion, a service for which

payment may be made in whole or in part under a federal health care program, namely

Medicare.

| Count | Name of Medicare Beneficiary Offered Cash By the Defendant | Approximate Date Defendant Offered Cash To Medicare Beneficiary | Amount Medicare Paid Axion For This Beneficiary |
|---|---|---|---|
| 2 | W.J. | May 12, 2015 | $2,220.92 |

| Count | Name of Medicare Beneficiary Offered Cash By the Defendant | Approximate Date Defendant Offered Cash To Medicare Beneficiary | Amount Medicare Paid Axion For This Beneficiary |
|---|---|---|---|
| 3 | O.B. | June 10, 2015 | $2,942.32 |
| 4 | M.J. | June 10, 2015 | $1,932.95 |
| 5 | L.J. | June 10, 2015 | $1,626.33 |

All in violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and 18 U.S.C. § 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7)

As a result of committing the offense alleged in this indictment (18 U.S.C. § 371),

the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 28

U.S.C. § 2461, and 18 U.S.C. § 982(a)(7), any property constituting or derived from

proceeds the defendant obtained as a result of such violation.

If any property subject to forfeiture, as a result of any act or omission by the

defendant:

      a.    Cannot be located upon the exercise of due diligence;
      b.    Has been transferred, or sold to, or deposited with a third party;
      c.    Has been placed beyond the jurisdiction of the Court;
      d.    Has been substantially diminished in value; or
      e.    Has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of

any other property of the defendant up to the value of the above forfeitable property,

including but not limited to all property, both real and personal, owned by the defendant.

By virtue of the commission of the offense alleged in this indictment, any and all

interest the defendant has in the above-described property is vested in the United States

and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C.

§ 2461(c), and 18 U.S.C. § 982(a)(7).

A TRUE BILL

June 20, 2018
Date

_____
GRAND JURY FOREPERSON

JOSEPH D. BROWN
UNITED STATES ATTORNEY

_____
L. Frank Coan, Jr.
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:18-CR-*40* |
| | § | (Judge *RWS/ JDL* ) |
| BERYL-ANNE TUFON LOBE | § | |
| a/k/a BERYL-ANNE GOKALE TUFON | § | |

## **NOTICE OF PENALTY**

### **Count One**

VIOLATION:                    18 U.S.C. § 371

PENALTY:                      Imprisonment for not more than 5 years; the greater of
a fine not to exceed $250,000, two times the gross gain
to the defendant, or two times the loss to the victim;
and a term of supervised release of not more than 3
years.

SPECIAL ASSESSMENT:          $100.00

### **Counts Two through Five**

VIOLATION:                    42 U.S.C. § 1320a-7b(b)(2)(B)

PENALTY:                      Imprisonment for not more than 5 years; the greater of
a fine not to exceed $250,000, two times the gross gain
to the defendant, or two times the loss to the victim;
and a term of supervised release of not more than 3
years.

SPECIAL ASSESSMENT:          $100.00 each count